**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SWEETBERRY HOLDINGS LLC, | : | Case No. 20-08200 (FLW) |
| Plaintiff, | : | |
| | : | OPINION |
| v. | : | |
| TWIN CITY FIRE INSURANCE COMPANY, | : | |
| Defendant | : | |

**WOLFSON, Chief Judge:**

Plaintiff Sweetberry Holdings, LLC ("Plaintiff"), on behalf of itself and all persons and entities with coverage under a property insurance policy issued by Defendant Twin City Fire Insurance Company ("Defendant"), filed this putative class action seeking coverage for losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. Presently before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth herein, Defendant's Motion is **GRANTED**.

I.  BACKGROUND

Plaintiff is a New Jersey company that owns and operates ice cream stores located in New Jersey, Florida, and Illinois. (Compl. ¶ 4.) Defendant issued to Plaintiff Policy No. 13 SBA AB3313 for the period of October 23, 2019 through October 23, 2020 (the "Policy"), which included coverage for thirteen of Plaintiff's locations. (*Id*. ¶ 12.) The Policy provides that Defendant will "pay for all losses caused by a 'Covered Cause of Loss,' defined as 'risks of direct physical loss' unless the loss is *excluded* or *limited* in the Policy." (*Id*. ¶ 15 (capitalization altered

1

and emphasis added).) The Policy covers "*Business Income*" lost during the suspension of operations, "*Extra Expenses*" that a business "would not have incurred if there had been no direct physical loss or physical damage to the property," and "Business Income from *Dependent Properties*." (*Id*. ¶¶ 17-24 (emphasis added).) The Policy also extends coverage to losses sustained "when access . . . is specifically prohibited by order of a *civil authority* as the direct result of a Covered Cause of Loss." (*Id*. ¶ 25 (emphasis added).)

On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order 103, which declared a state of emergency and public health emergency in response to the COVID-19 pandemic. Thereafter, on March 21, 2020, Governor Murphy issued Executive Order 107, "requiring all resident to stay home, prohibiting all social gatherings, and closing all non-essential retail businesses, including Plaintiff's ice cream stores." (*Id*. at ¶ 41.) Similar orders were issued nationwide by state and local authorities throughout March and April 2020 (the "Closure Orders").[1] "As a result of the presence of COVID-19 and the Closure Orders," Plaintiff alleges that it suspended business operations and sustained business losses at the premises of its Dependent Properties.[2] (*Id*. at ¶ 50.)

Relevant here, the Policy is modified by a form entitled "Limited Fungi, Bacteria or Virus

---

[1] In addition to New Jersey, Plaintiff operates stores in Illinois and Florida. In Illinois, Governor Pritzker issued a "stay at home" order on March 20, 2020, closing all non-essential retail businesses, including Plaintiff's ice cream stores. (Compl. ¶ 42.) In Florida, on April 1, 2020, Governor DeSantis issued Executive Order 20-91, limiting all people's movements to essential activities, and excluding non-essential businesses from operating if unable to perform social distancing. (*Id*. at ¶ 43.)

[2] Dependent Property is defined by the Policy as "property owned, leased or operated by others whom you depend on to: (a) Deliver materials or services to you or to others for your account. . . . [;] (b) Accept your products or services; (c) Manufacture your products for delivery to your customers under contract for sale; or (d) Attract customers to your business premises. (Moving Br., Ex. A, at 63.)

Coverage" (the "Virus Exclusion"). The Virus Exclusion specifies that it applies to and modifies all coverages in the Special Property Coverage Form, including the Business Income, Civil Authority, Extra Expense, and Dependent Properties coverages. (Moving Br., Ex. A, at 166.) The Virus Exclusion provides the following language:

> [Defendant] will not pay for loss or damage caused directly or indirectly by any of the following . . . (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or *virus*. (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."

(*Id*. (emphasis added).) Later, in an exception to this exclusion, the Policy specifies that the "exclusion does not apply: (1) When 'fungi', wet or dry rot, bacteria or virus results from fire or lightning; or (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus (the "Limited Coverage provision") with respect to loss or damage by a cause of loss other than fire or lightning." (*Id*.) This Limited Coverage provision is a carveout to the Virus Exclusion that provides up to $50,000 in coverage but "only applies when the . . . virus is the result of one or more of the following causes . . . (1) A 'specified cause of loss' other than fire or lightning; (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises." (*Id*. at 167.) "Specified cause of loss" is defined in the Policy as: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (*Id*. at 76.)

Plaintiff submitted a claim under the Policy for losses sustained as a result of the Closure Orders, which was subsequently denied by Defendant. (Compl. ¶¶ 53-54.) Thereafter, on July 2, 2020, Plaintiff filed this putative class action against Defendant. Plaintiff brings four breach of

3

contract claims, asserting that Defendant breached its obligations to provide coverage under the (i) business income, (ii) civil authority, (iii) extra expense, and (iv) dependent properties provisions. (*Id.* ¶¶ 66-98.) Plaintiff further seeks a declaration that the "losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under [Defendant's] policies." (*Id.* at 25.) Plaintiff brings all its claims individually and on behalf of a proposed class of businesses with the same policy that have suffered losses due to COVID-19 related closures. (*Id.*) Defendant moves for judgment on the pleadings on both the individual and class claims.

## II.     STANDARD OF REVIEW

### a.  Rule 12(c) Standard

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 n.47 (3d Cir. 2016); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards"); *Newton v. Greenwich Twp.*, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) ("The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).

A motion to dismiss pursuant to Rule 12(b)(6), challenges the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim

4

upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).

A court must dismiss a claim under Rule 12(b)(6) if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980). The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 570 (2007). Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 555). In considering a motion to dismiss, the court generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

### b. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law."[3] *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An

---

[3] The parties do not dispute that New Jersey law applies to this matter.

insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010). However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175, (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997), and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530

(quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "for the insured a better policy of insurance than the one purchased." *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because "the burden is on the insurer to bring the case within an exclusion[,]" *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (quoting *Westchester Fire Ins. Co. v. Cont'l Ins. Companies*, 126 N.J. Super. 29, 41 (App. Div. 1973), *aff'd*, 65 N.J. 152 (1974)), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A-1237-14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

### III. DISCUSSION

In its Complaint, Plaintiff asserts that COVID-19 is a "covered cause of loss" because the Policy "contains no relevant virus exclusion." (*Id*. ¶ 1.) Plaintiff further alleges that "the presence of COVID-19 caused direct physical loss of and[] damage to the Insured Property under the Policy." (*Id*. ¶ 48.) Additionally, Plaintiff contends that "[t]he Closure Orders of civil authorities," in responding to this "covered cause of loss," caused Plaintiff to "sustain[] a suspension of business operations, sustained losses of business income, and incur[] extra expenses." (*Id*. ¶¶ 49, 50.) Plaintiff claims that, because these losses are covered under the Policy, it is entitled to receive the benefit of the coverage. (*Id.* ¶ 3.) Defendant, however, argues that the Virus Exclusion precludes any coverage for Plaintiff's losses.

Generally, the Policy's Virus Exclusion applies to, and modifies, all coverage under the Policy. (Moving Br., Ex. A, at 166.) As such, if the Virus Exclusion is determined to be enforceable, and specifically applicable to Plaintiff's claims, it will dispose of the case. *See Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8678, 2021 WL 1040490, at *4 (D.N.J. Mar. 18, 2021). At issue is whether this exclusion applies. Plaintiff attacks the enforceability of the Policy's Virus Exclusion on two grounds. First, Plaintiff argues that the Virus Exclusion is ambiguous and deprives the insured of its "reasonable expectation that, in at least some circumstances, it would afford coverage for loss of property caused by a virus." (Opp. Br., at 7.) Second, Plaintiff argues that the Limited Coverage provision of the Virus Exclusion is "illusory" because, despite a policyholder's reasonable expectation of coverage, "the Policy appears to make such [potential] coverage unattainable." (*Id*. at 10.) The Court, therefore, begins with a discussion of the exclusion and considers each of Plaintiff's arguments, in turn.

8

A. **Application of the Virus Exclusion to Plaintiff's Claim**

I begin with the language of the Policy. The "Limited Fungi, Bacteria or Virus Coverage" provides

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread, or any activity of "fungi", wet rot, dry rot, bacteria or virus.
>
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

(Compl., Ex. A, at 166.) The Policy, however, provides "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus." Specifically,

> [Defendant] will pay for loss or damage by 'fungi', wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:
>
> (1) Direct physical loss or direct physical damage to Covered Property caused by 'fungi', wet rot, dry rot, bacteria, and virus, including the cost of removal of the 'fungi', wet rot, dry rot, bacteria or virus.
>
> (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the 'fungi', wet rot, dry rot, bacteria, or virus; and
>
> (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that 'fungi', wet rot, dry rot, bacteria or virus are present.

(*Id.* at 167.) The Limited Coverage applies only "when the 'fungi', wet or dry rot, bacteria or virus is the result of one of more of the following causes . . . [a] 'specified cause of loss' other than fire or lightning" or "Equipment Breakdown Accident occurs to Equipment Breakdown Property, if

9

Equipment Breakdown applies to the affected premises." (*Id.*) The Policy defines "specified cause of loss" as "Fire; lightning, explosion, windstorm, or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (*Id.* at 76.)

As written, I do not find the Virus Endorsement to be genuinely ambiguous. A genuine ambiguity exists in an insurance contract "where the phrasing of the policy is so confusing that the average policyholder cannot make out of the boundaries of coverage." *Lee v. Gen. Acc. Ins. Co.*, 337 N.J. Super. 509, 513 (App. Div. 2001); *see also Zacarias*, 168 N.J. at 601 ("[I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding . . . if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires a strenuous study to comprehend.") (citations omitted)). Where a genuine ambiguity exists, "courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id*. 168 N.J. at 595; *see* also *Gibson*, 158 N.J. at 671 ("[I]nsurance polices must be construed to comport with the reasonable expectations of the insured"). However, "where the language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as written.'" *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (quoting *Royal Ins.*, 271 N.J. Super. at 416). "[A]mbiguities will not be forced into an insurance policy nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question." *Id*.

Here, the Virus Exclusion is clear that Defendant will not pay for losses caused by a virus except in certain, specifically enumerated circumstances. Notably, other courts have considered

identical (and similar[4]) virus exclusions and found them to be applicable to losses sustained as a result COVID-19-related closure orders. Analyzing an identical Virus Exclusion provision in *Stern*, a New Jersey district court held that "the [Policy's] language is explicit and plainly excludes from coverage any loss 'caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of . . . virus.'" *Stern & Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, No. 20-11277, 2021 WL 1422860, at *5 (D.N.J. Apr. 14, 2021) (citations omitted); *see also Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 WL 135897, at *9 (E.D. Pa. Jan. 14, 2021) ("The coronavirus is a virus, and the Policy explicitly excludes losses caused directly or indirectly by viruses."); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. 20-4238, 2021 WL 131282 at *7 (E.D. Pa. Jan. 14, 2021) (following Third Circuit precedent to reject ambiguity of an identical virus exclusion); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-1863, 2021 WL 131555, at *8 (E.D. Pa. Jan. 14, 2021) (same). The exclusion plainly applies here. First, Plaintiff's losses were caused by the COVID-19 virus. *See Stern & Eisneberg P.C.*, 2021 WL 1422860, at *5 ("Any

---

[4] Analyzing similar, albeit not identical, policies in *Causeway* and *Garmany*, I found the relevant virus exclusions were not ambiguous. *See Garmany*, No. 20-8676, 2021 WL 1040490, at *7 (D.N.J. Mar. 18, 2021) (citing *Boxed Foods Co., LLC v. California Capital Insurance Co.*, No. 20-04571, 2020 WL 6271021, at *5 (N.D. Cal. Oct. 26, 2020)); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021) ("Plaintiffs' presentation of potential interpretations of that clause does not render it ambiguous or otherwise unclear."). Other courts that have considered similar virus exclusions have found their terms "to be unambiguous and clearly applicable 'to COVID-19, which is caused by a coronavirus that causes physical illness and distress.'" *See, e.g.*, *Humans & Resources, LLC v. Firstline Nat'l Ins. Co.*, No. 20-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (quoting *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Amer.*, 503 F. Supp. 3d 251, 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020)); *see also Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, No. 20-4699, 2021 WL 234355, at *7 (C.D. Cal. Jan. 20, 2021) ("[T]he Virus Exclusion clearly and unambiguously applies, as courts applying similar virus exclusions to COVID-19 have consistently found."); *AFM Mattress Co., LLC v. Motorists Commercial Mut. Ins. Co.*, 503 F. Supp. 3d 602, 2020 WL 6940984, at *4 (N.D. Ill. Nov. 25, 2020) (finding "no ambiguity in the language" of insurance policy's virus exclusion).

losses that Plaintiff allegedly suffered were caused either by COVID-19 itself (a virus) or by the executive orders and declarations that forced Plaintiff to suspend its operations. This Court notes that those orders and declarations were themselves caused by the virus."). Moreover, there is no allegation that any "specified cause of loss," as defined by the Policy, occurred as a result of the COVID-19 virus. Accordingly, the Virus Exclusion applies to bar coverage.[5]

Finally, as a point of clarification, the Virus Exclusion need not explicitly refer to a pandemic to be applicable. *See Beach Glo Tanning Studio Inc. v. Scottsdale Insurance Company*, No. 20-13901, 2021 WL 2206077 at *7 (D.N.J. May 28, 2021). Plaintiff requests that this Court "construe the Virus Endorsement in a manner that affords Plaintiff coverage for the physical loss of property it sustained because of the COVID-19 *pandemic*." (Opp. Br., at 13 (emphasis added).) Although Plaintiff does not explicitly make the argument that the virus exclusion is inapplicable because it does not address a pandemic, this framing is suggested when it claims that the Policy is illusory because "there is no conceivable way that the losses caused by a viral *pandemic* could ever be the result of any specified cause of loss in the Policy." (*Id.* at 10 (emphasis added).) Consistent with numerous opinions addressing COVID-19 insurance claims, this Court will not draw a distinction between losses stemming from a virus or a pandemic in determining the

---

[5]  Plaintiff attempts to read an ambiguity into the the Virus Exclusion by suggesting that the Limited Coverage provision, *i.e.*, the exception to the Virus Exclusion, "is written in a circular way which leaves the policyholder unsure as to when, if ever, coverage could be afforded." (Opp. Br., at 9.)  However, as set forth *infra*, I do not find that the Limited Coverage provision is circular. Rather, the Limited Coverage provision provides a narrow exception to the Virus Exclusion under defined circumstances. None of these circumstances occurred here. The presence of a conditional exception to an exclusion in an insurance policy does not render the exclusion ambiguous. *See Flomerfelt*, 202 N.J. at 441. Plaintiff's purported misunderstanding does not render the Policy ambiguous or otherwise unclear.

12

applicability of a Virus Exclusion clause.[6] As I have previously explained, "[t]he term 'pandemic' simply defines the prevalence of a virus or disease." *Garmany*, 2021 WL 1040490, at *7 (D.N.J. Mar. 18, 2021). Thus, the Virus Exclusion unambiguously applies to loss stemming from the COVID-19 pandemic.

Plaintiff alleges losses due only to COVID-19,[7] not from any specified cause of loss as defined in the Policy. Accordingly, the Court finds that the Virus Exclusion is applicable to Plaintiff's losses and thus bars coverage.

### B. The Limited Coverage Provision Does Not Apply

Plaintiff next argues that, even if the Virus Exclusion bars their claims, they are entitled to

---

[6] *See e.g., Moody*, 2021 WL 135897, at *9 ("The coronavirus outbreak is undoubtedly a pandemic . . . . But the Virus Exclusion specifically notes that it applies 'whether or not the loss event results in widespread damage or affects a substantial area.' . . . A virus spreading around the world, which was then classified as a pandemic, fits squarely within the plain language of the exclusion."); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, No. 20-01192, 2020 WL 7490095, at *14 (N.D. Ohio Dec. 21, 2020) (rejecting the plaintiff's argument "that the virus exclusion is ambiguous and does not address a pandemic"); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1869, 2020 WL 7395153, at *9 (E.D. Pa. Dec. 17, 2020) ("The lack of a specific reference to a pandemic in the policy does not render the provision ambiguous. In any event, there is no real distinction between 'virus' and 'coronavirus pandemic.'"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-04434, 2020 WL 7342687 (N.D. Cal. Dec. 14, 2020) (rejecting plaintiff's argument that had defendant "intended to exclude risks associated with a pandemic, the [p]olicy could have referred explicitly to these risks or included a specific exclusion targeted at pandemics").

[7] As this Court and many others have held, COVID-19 is the cause of government closure orders; the orders only exist because of the virus. *See e.g.*, *Causeway,* 2021 WL 486917, *6 ("The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey."); *Podiatry Foot & Ankle Institute P.A. v. Hartford Insurance Company of Midwest*, No. 20-20057, 2021 WL 1326975, at *2 (D.N.J. Apr. 9, 2021) ("[T]he exclusion applies to COVID-19 losses because 'but for the spread of COVID-19, governments would not have issued closure orders,' and the business would not have curtailed operations."); *Eye Care Center of New Jersey, PA v. Twin City Fire Insurance Company*, No. 20-05743, 2021 WL 457890, at *4 (D.N.J. Feb. 8, 2021) ("[L]osses from COVID-19 closures are covered by the virus exclusion because COVID-19 could still be considered an indirect or sequential cause").

coverage under the Policy's Limited Coverage exception[8] to the Virus Exclusion. Plaintiff, however, does not allege that the virus was caused by any specified cause of loss. Instead, it argues that the requirement is impossible to satisfy, and thus "affords illusory coverage in violation of New Jersey law." (Opp. Br., at 2.) Plaintiff explains that "[v]iruses do not 'result from' lightning, explosions, falling objects or water damage. Viruses can only multiply inside the living cells of other organisms." (Opp. Br., at 12.)  Plaintiff reasons that, unlike fungi, wet and dry rot, and bacteria, it is a "natural impossibility" for viruses to result from one of the specified causes of loss. (*Id*.) Therefore, Plaintiff maintains that, because losses caused by a virus cannot be covered by the Limited Coverage provision, Defendant's coverage for virus-related losses is "illusory" and "should not be applied to exclude Plaintiff's and putative class members' claims." (Opp. Br., at 10.)

Plaintiff cannot demonstrate that coverage is impossible to trigger, and thus illusory, under the Limited Coverage provision. Under New Jersey law, a contract is illusory and not legally binding, if it is "wholly optional with one party . . . whether he shall perform or not." *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 227 (3d Cir. 2020) (quoting *G. Loewus & Co. v. Vischia*, 2 N.J. 54, 65 (1949)). Coverage under an insurance policy is considered "illusory" where a premium is paid for a particular type of coverage and that coverage turns out to be functionally nonexistent. *See* Steven Plitt, 7 Couch on Ins. §101:20 (3d ed. June. 2021); *see*

---

[8] As discussed *supra*, the Policy provides "Limited Fungi, Bacteria, or Virus Coverage" up to $50,000 that "only applies when the . . . virus is the result of one or more of the following causes . . . (1) A 'specified cause of loss' other than fire or lightning; (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises." (Moving Br., Ex. A, at 167.) "Specified cause of loss" is defined in the Special Coverage Property Form and means: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (*Id*. at 76.)

14

*also ACE Cap. Ltd. v. Morgan Waldon Ins. Mgmt., LLC*, 832 F. Supp. 2d 554, 572 (W.D. Pa. 2011) (holding that an insurance policy is illusory where it "would not pay benefits under any reasonably expected set of circumstances") (quoting *Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 339 (Ind. Ct. App. 1993)).

Indeed, an insurance policy provision is only illusory where it results in a complete lack of any coverage. *See e.g.*, *PNC Fin. Servs. Grp., Inc. v. Houston Cas. Co.*, 647 F. App'x 112, 119 (3d Cir. 2016) (finding coverage under a policy "not to be illusory because the policy would still provide coverage for [claims] that do not fall within any of the exceptions"); *Benecard Servs., Inc. v. Allied World Specialty Ins. Co.*, No. 15-8593, 2020 WL 2840135 (D.N.J. May 31, 2020) ("[A]pplication of [an] [e]xclusion as written does not render its coverage illusory simply because it does not apply to [certain] claims."). In that connection, "the mere possibility of some coverage is enough" to defeat Plaintiff's argument that a provision is illusory. *Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017), *aff'd*, 732 F. App'x 616 (9th Cir. 2018). Further, a contract with conditions is not necessarily illusory. *See Omni Credit All., Inc. v. Kennedy Funding, Inc.*, No. 04-4764, 2007 WL 4365314, at *5 (D.N.J. Dec. 12, 2007), *aff'd*, 371 F. App'x 252 (3d Cir. 2010). "A promise is not illusory . . . if the power to terminate is dependent on something outside the promisor's control, such as . . . the happening of some natural disaster." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 578 (D.N.J. 2002); *see also ACE Capital*, 832 F.Supp.2d 554, 572 (quoting *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 459 (Mass. 1999)) (holding that an insurance policy "is not illusory simply because of a potentially wide exclusion").

For example, in *Ultimate Hearing*, the Eastern District of Pennsylvania rejected the plaintiffs' argument that an identical limited coverage provision within a virus exclusion was illusory. *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL

15

131556, at *9 (E.D. Pa. Jan. 14, 2021). The plaintiffs, there, argued that it was "impossible to conceive of a situation where a *virus* would be caused by one of the 'specified causes of loss'" and that the coverage therefore provided "no effective protection." *Id.* (emphasis added). Rejecting this argument, the court explained that the inclusion of multiple perils ("*not just viruses*") created a clear and obvious possibility of coverage under the policy. *Id.* (emphasis added). Numerous other courts have reached the same conclusion. *See Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20-4226, 2021 WL 1208991, at *4 (N.D. Ill. Mar. 31, 2021) ("[M]aterially identical coverage provisions can apply, and have applied, in easily imaginable circumstances."); *Westside Head & Neck v. Hartford Fin. Servs. Grp.*, No. 20-06132, 2021 WL 1060230, at *3-4 (C.D. Cal. Mar. 19, 2021) ("Plaintiff is wrong that the Limited Coverage is impossible to trigger. As a threshold matter, the Limited Coverage applies to multiple perils – fungi, wet rot, dry rot, bacteria *and* virus."); *Franklin EWC*, 2020 WL 7342687, at *5 (quoting *Crusader Ins. Co. v. Burlington Ins. Co.*, No. 19-5371, 2020 WL 4919387 (C.D. Cal. June 12, 2020)) ("[H]ere the provision provides 'the possibility of some coverage that is not excluded[.]'")).

Plaintiff asks this Court to part ways from these cases. (Opp. Br., 12.) I decline to do so. Applying a similar interpretation here does not "nullify the insurance" obtained by Plaintiff, *Search EDP, Inc. v. Am. Home. Assur. Co.*, 267 N.J. Super. 537, 545 (App. Div. 1993), or otherwise "render [the Policy's] undertakings meaningless." *Cannavo v. Liberty Mut. Ins. Co.*, No. A-6458-05T1, 2007 WL 2990109, at *4 (N.J. Super. Ct. App. Div. Oct. 16, 2007). Rather, it delivers to Plaintiff simply the bargained-for coverage. Plaintiff contracted to receive payment under the Limited Coverage provision if fungi, wet rot, dry rot, bacteria *or* virus were to *result from* a wide variety of causes. (Moving Br., Ex. A, at 167 (emphasis added).) Although a covered scenario did not occur here, I agree with the *Ultimate Hearing* court's reasoning that "it is not

16

difficult to imagine" a scenario where coverage could be triggered. 2021 WL 131556, at *9. Coverage was conditional on a specific set of events, which did not apply to Plaintiff's unfortunate situation.[9] *See Omni Credit*, 2007 WL 4365314, at *5.

Plaintiff has failed to demonstrate that coverage under the Limited Coverage provision is impossible and has therefore failed to show that coverage under the Policy is illusory. *See Franklin EWC*, 2020 WL 7342687, at *5. Accordingly, the Court declines to find coverage based on the Limited Coverage provision. Because the Court finds that the Virus Exclusion is both enforceable and bars coverage of Plaintiff's claims, Plaintiff has failed to state a claim for declaratory relief. *See N&S Restaurant*, 499 F. Supp. 3d 74, 81.

### C. The Reasonable Expectations of the Parties

Plaintiff's final argument that its reasonable expectations were not satisfied by the application of Virus Exclusion coverage is similarly unpersuasive. *See Body Physics v. Nationwide Ins.*, No. 20-9231, 2021 WL 912815, at *6 (D.N.J. Mar. 10, 2021). It is well-settled that the reasonable expectations of the insured are only relevant when a genuine ambiguity exists in the insurance policy. *See Causeway,* 2021 WL 486917, *6 (citing *Zacarias*, 775 A.2d at 1264).

---

[9] Plaintiff is also incorrect in its argument that the Limited Coverage could never provide coverage for loss caused by a virus. (Opp. Br., at 12.) For example, in *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, 528 N.W.2d 329 (Neb. 1995), the Supreme Court of Nebraska held that a specified cause of loss, a windstorm, carried a virus to the plaintiff's livestock, which were insured under the defendant's policy. *Curtis*, 528 N.E.2d 329, 331. The court determined that the virus was the result of the covered peril. *Id.* at 333. While *Curtis's* example of swine becoming sick due to a windstorm bears an imperfect resemblance to Plaintiff's claimed retail store damage, its holding demonstrates that viruses can result from a specified cause of loss. Plaintiff itself acknowledges that "COVID-19 can be present outside the body in viral fluid particles," is "easily communicable through droplets in the air," and "remains stable and transmittable in airborne aerosols for up to three hours." (Compl. ¶¶ 31, 33.) Although viruses may not be perceived in the same material manner as fungus or rot, they are, as described by the Plaintiff, a "physical substance" that can result from one or more of the specified causes of loss. (*Id.*)

17

Plaintiff's expectations do not replace the clear, unambiguous terms of the policy. *See, e.g.*, *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *8 (D.N.J. Mar. 25, 2021) ("[T]he language of the Virus Exclusion is clear, and should not be overridden by [plaintiff's] claimed reasonable expectation or public policy"). Here, where no ambiguity exists, "the Court's consideration of the parties' reasonable expectations could result in the Court 'writ[ing] for the insured a better policy of insurance than one purchased.'" *Zacarias*, 775 A.2d at 1264 (quoting *Gibson v. Callaghan*, 158 N.J. 662, 730 A.2d 1278, 1282 (1999)). The New Jersey Supreme Court has explicitly advised against doing this "'[i]n the absence of any ambiguity.'" *Id*. Therefore, the Court will not consider the reasonable expectations of the parties; rather the plain, unambiguous language of the Virus Exclusion applies, and it bars coverage.

### IV.  CONCLUSION

For the reasons set forth herein, Defendant's Motion for Judgment on the Pleadings is **GRANTED**. Plaintiff's Complaint is dismissed in its entirety.

DATED: July 19, 2021                                  /s/ Freda L. Wolfson
                                                      Freda L. Wolfson
                                                      U.S. Chief District Judge

18